**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ZARIFAH MUHAMMAD, | : | CIVIL NO.: 1:23-cv-01341 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTIN O'MALLEY, [1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**<u>MEMORANDUM OPINION</u>**

**I. Introduction.**

In this social security action, Plaintiff Zarifah Muhammad seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons

---

[1] Martin O'Malley is now the Commissioner of Social Security, and he is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

set forth below, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 9-1* to *9-7.*[2]  On December 23, 2020, Muhammad protectively filed[3] an application for disability insurance benefits and an application for supplemental security income, alleging that she has been disabled since August 30, 2020. *See Admin. Tr.* at 25. After the Commissioner denied her claims at the initial and reconsideration levels of administrative review, *id.* at 197–216, 218–43, Muhammad requested an administrative hearing, *id.* at 244–45.  In May 2022, Muhammad, who was represented by counsel, as well as a vocational expert testified via video at a hearing before Administrative Law Judge Scott Tirrell (the "ALJ"). *Id.* at 45–78. In September 2022, the ALJ denied Muhammad's claims for benefits. *Id.* at 22–43. Muhammad appealed the ALJ's decision to the Appeals Council, which denied her

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Muhammad's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

request for review. *Id.* at 1–6.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In August 2023, Muhammad, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying her claims. *See Doc. 1 ¶¶* 1–3.  She requests "a judgment for such relief as may be proper, including costs and attorney's fees." *Id.* at 2 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 7.*  The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 8, 9.*  The parties filed briefs, *see docs. 12, 14, 15*, and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019).  "[T]he threshold for such evidentiary

3

sufficiency is not high." *Biestek*, 587 U.S. at 103.  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Muhammad is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

**B.  Initial Burdens of Proof, Persuasion, and Articulation.**

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Further, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]  Unlike

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)).  Here, the ALJ determined that Muhammad met the insured-status requirements through September 30, 2020. *Admin. Tr.* at 26, 28.

with disability insurance benefits under Title II of the Social Security Act,

"[i]nsured status is irrelevant in determining a claimant's eligibility for

supplemental security income benefits" under Title XVI of the Social Security Act.

*Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar.

22, 2017).  Supplemental Security Income "is a federal income supplement

program funded by general tax revenues (not social security taxes)" "designed to

help aged, blind or other disabled individuals who have little or no income." *Id*.

The ALJ follows a five-step sequential-evaluation process to determine

whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this

process, the ALJ must sequentially determine: (1) whether the claimant is engaged

in substantial gainful activity; (2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age,

education, work experience, and residual functional capacity ("RFC"). 20 C.F.R.

§§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of

Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an

individual is still able to do despite the limitations caused by his or her

impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)

(quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).  But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites.  Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).  The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).  Otherwise, "'the

reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On September 9, 2022, the ALJ denied Muhammad's claims for benefits. *Admin. Tr.* at 22–43.  He proceeded through the five-step sequential-evaluation process.

### A.  Step One.

At step one of the sequential-evaluation process, the ALJ found that Muhammad had not engaged in substantial gainful activity since her alleged onset date of August 30, 2020. *Id.* at 28.

### B.  Step Two.

At step two of the sequential-evaluation process, the ALJ found that Muhammad had the following severe impairments: bipolar disorder, major depressive disorder, anxiety, personality disorder, and post-traumatic stress disorder (PTSD). *Id.*  He also found that although Muhammad had a history of several physical impairments, those impairments were not severe. *Id.*[5]

---

[5] Because Muhammad does not raise any issues about how the ALJ analyzed her physical impairments, we will not further mention those physical impairments, including when summarizing the rest of the ALJ's decision.

8

**C. Step Three.**

At step three of the sequential-evaluation process, the ALJ found that

Muhammad did not have an impairment or combination of impairments that met or

medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1. *Id*. at 28–30.  Specifically, that ALJ considered Listings 12.04, 12.06, and 12.15

*Id*. at 29–30.  In doing so, he considered the four broad areas of mental functioning

set forth in the disability regulations for evaluating mental disorders[6] and in the

listings, known as the paragraph B criteria,[7] and he determined that Muhammad

---

[6] When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019).  The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F. R. §§ 404.1520a, 416.920a.  As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. at § 404.1520a(c)(3), 416.920a(c)(3).  A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id*. at §§ 404.1520a(c)(4), 416.920a(c)(4).  The ratings in these four broad functional areas are used at Step 2 to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used at Step 3 to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id*. at  §§ 404.1520a(d), 416.920a(d).

[7] The listings for mental disorders contain either two paragraphs (A and B) or three paragraphs (A, B, and C). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A.2.  Except as to Listing 12.05 (intellectual disorder), paragraph B of each of the listings for the mental disorders sets forth the same four functional criteria as set forth in 20 C.F. R. §§ 404.1520a, 416.920a, and the listings use the same five-point rating scale as those regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1,

had moderate limitations in each area. *Id*.  The ALJ recognized that the paragraph

B criteria are not an RFC; rather, they "are used to rate the severity of mental

impairments at steps 2 and 3 of the sequential evaluation process[,]" and the RFC

"assessment used at steps 4 and 5 of the sequential evaluation process requires a

more detailed assessment of the areas of mental functioning." *Id*. at 30.  And he

asserted that his RFC that follows "reflects the degree of limitation" he "has found

in the 'paragraph B' mental function analysis." *Id*.

### D.  The RFC.

The ALJ then determined that Muhammad had the RFC to do work at all

exertional levels but with some non-exertional limitations. *Id*. at 30.  He concluded

that Muhammad "can understand, remember and carry out simple instructions; she

can perform simple, routine tasks; she can make simple work-related decisions; she

can sustain attention and concentration over an 8 hour workday, with customary

breaks, on performing such tasks; she can use judgment in making work-related

decisions commensurate with this same type of work; [and she] can adapt to

changes in routine work settings." *Id*.  He also determined that Muhammad "can

have occasional interaction with coworkers and supervisors, beyond any increased

---

12.00.A.2.b, 12.00.E, 12.00.F.  This is what the ALJ is referring to when he refers
to the paragraph B criteria.

interactions initially required to learn the job, but [she] can never work in tandem with coworkers to complete job tasks, such as with assembly line work; and she can never have interaction with the public required in order to perform job tasks." *Id*.

In making this RFC assessment, the ALJ summarized Muhammad's assertions and testimony. *Id*. at 31–32.  The ALJ concluded that although Muhammad's impairments "could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. at 32.

In making the RFC assessment, the ALJ also summarized Muhammad's medical records and treatment notes. *Id*. at 33–34.  And he considered the medical opinion evidence and prior administrative medical findings in the record. *Id*. at 34–35.  The ALJ first considered the opinions and findings of the state agency psychological consultants.[8]  The ALJ recounted that the consultants concluded that Muhammad had mild to moderate limitations in the paragraph B criteria and that Muhammad could perform unskilled work. *Id*. at 35.  The ALJ found the opinions

---

[8] The ALJ noted that as to Muhammad's Title II claim, the state agency consultants found that Muhammad's depressive disorder was not severe and that there was insufficient evidence to make an RFC determination. *Admin. Tr.* at 35.  After noting this, the ALJ focused on the state agency consultants' opinions and findings regarding Muhammad's Title XVI claim.

of the state agency consultants "not fully consistent with the overall record evidence that is now available for review." *Id.* He explained that the consultants did not phrase their opinions "using policy-compliant language," that "additional evidence is now available for review," and that they did not properly consider Muhammad's PTSD. *Id.* He found that Muhammad has social limitations which the state agency consultants should have factored into their opinions. *Id.* And he concluded that their "opinions are persuasive, in part, only to insofar as consistent with the limitations incorporated into the above residual functional capacity findings, which is supported by the overall record now available, as discussed herein." *Id.*

The ALJ then considered the opinion of consultative examiner Dr. Deneen, who performed an independent mental status examination of Muhammad. *Id.* The ALJ recounted that Dr. Deneen opined that Muhammad had "no limitations with understanding, remembering, and applying simple directions and instructions; maintaining personal hygiene and appropriate attire; and being aware of normal hazards and taking appropriate precautions." *Id.* "Dr. Denee[n] opined that [Muhammad] would have mild limitations with understanding, remembering, and applying complex directions and instructions; using reason and judgment to make work related decisions; interacting adequately with supervisors, coworkers, and the public; and sustaining an ordinary routine and regular attendance at work." *Id.*

"Further, Dr. Deneen opined that [Muhammad] would have a moderate limitation with sustaining concentration and performing a task at a consistent pace; regulating emotions; controlling behavior; and maintaining well-being." *Id*.[9]  Noting that Dr. Deneen did not phrase his opinions "using entirely policy compliant language," that ALJ found Dr. Deneen's opinion persuasive in part. *Id*.  He reasoned that the "opinion is persuasive to the extent that it is consistent with the claimant requiring simple instructions; simple and routine tasks; and with the other established limitations factored into the above residual functional capacity based on the combination of the claimant's mental impairments." *Id*.  The ALJ noted Dr. Deneen's findings "are supported by his one-time mental status examination" and are "also generally consistent with the overall record evidence in its entirety including the claimant's treatment notes and the claimant's testimony elicited at the hearing." *Id*.

The ALJ also noted that he considered the third-party statements in the record, including school records. *Id*. at 35–36.  And without mentioning specific evidence, he stated that he "did not provide articulation about the evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c)." *Id*. at 36.

---

[9] For readability purposes, here—and elsewhere—when citing or quoting the ALJ's decision, we omit the ALJ's citations to the record.

**E.  Step Four.**

At step four of the sequential-evaluation process, the ALJ found that Muhammad could not perform her past relevant work as a dining room attendant or patient transporter. *Id*. at 36.

**F.  Step Five.**

At step five of the sequential-evaluation process, considering Muhammad's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as commercial or institutional cleaner, hand packager, and hand launderer—that exist in significant numbers in the national economy that Muhammad could perform. *Id*. at 36–37.

In sum, the ALJ concluded that Muhammad was not disabled from August 30, 2020 (which is the alleged onset date), through the date of his decision on September 9, 2022. *Id*. at 37.  Thus, he denied Muhammad's claims for benefits. *Id*. at 37–38.

**V.  Discussion.**

Muhammad contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to explain how he arrived at the mental limitations he included in her RFC.  More specifically, Muhammad asserts that the ALJ did not explain how the evidence supports his RFC determination regarding her

limitations on interacting with others and maintaining attention and concentration. Muhammad also contends that the record suggests she has greater limitations interacting with others and maintaining attention and concentration than those imposed by ALJ in the RFC.  And she asserts that that ALJ's errors were harmful because if greater limitations regarding interacting with others and maintaining attention and concentration would have been included in the RFC, based on the testimony of the vocational expert, she would be precluded from employment.

For the reasons discussed below, we conclude that the ALJ has not met his burden of articulation regarding Muhammad's limitation regarding concentrating, persisting, or maintaining pace.  And lacking a clear explanation of the ALJ's reasoning, we cannot conclude that the ALJ's decision was supported by substantial evidence.  The ALJ's decision, therefore, will be vacated and the case remanded to the Commissioner for further proceedings.

**A.  The ALJ failed to articulate the basis for his RFC with respect to Muhammad's moderation limitation regarding concentrating, persisting, or maintaining pace.**

Muhammad claims that the ALJ failed to explain how he accounted for her limitations regarding maintaining attention and concentration in the RFC.  Before addressing Muhammad's specific arguments, we set forth the standards regarding the RFC assessment in general.

"The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1). In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*, 1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

Further, "[s]urveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505

(3d Cir. 2009).  In fact, in evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705.

In setting the RFC, the ALJ must also clearly articulate his or her reasoning. In other words, the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05).  Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  The ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

Applying the above standards to the present record, we conclude that the ALJ's failed in his duty of articulation.  He failed to explain how his finding that

17

Muhammad had a moderation limitation in concentrating, persisting, or

maintaining pace translated to the limitations he imposed in the RFC.

At Step 3 of the sequential-evaluation process, that ALJ found that

Muhammad had a moderate limitation regarding concentrating, persisting, or

maintaining pace. *Admin. Tr.* at 29.  He provided a terse explanation for the basis

of that finding:

> [Muhammad ] reported in her function report that she shops by
> computer and she reported it takes her about a week because
> she is always unsure.  She reported she can count change and
> handle a checking and savings account.  Her attention and
> concentration were noted to be mildly impaired during the
> independent mental status examination but she was able to
> count and perform simple math.  She was not able to perform
> serial 7's or serial 3's.  It was estimated that her intellectual
> functioning was below average to borderline and her general
> fund of information was somewhat limited.  As such, the
> undersigned finds a moderate limitation exists in this area.

*Admin. Tr.* at 29.  The ALJ then determined that Muhammad had the RFC to

"understand, remember and carry out simple instructions; she can perform simple,

routine tasks; she can make simple work-related decisions; she can sustain

attention and concentration over an 8 hour workday, with customary breaks, on

performing such tasks; she can use judgment in making work-related decisions

commensurate with this same type of work; [and she] can adapt to changes in

routine work settings." *Id*. at 30.  But he failed to provide an explanation about

how he arrived at the RFC in that regard given Muhammad's moderate limitation on concentrating, persisting, or maintaining pace.

The Commissioner maintains that the ALJ accounted for Muhammad's mental limitations in the RFC and his "rationale it traceable." *Doc. 14* at 8. But in attempting to trace the ALJ's rationale, the Commissioner relies on evidence that the ALJ did not cite or discuss.[10] The Court, however, is limited to reviewing "the ALJ's stated analysis." *Karstetter v. Kijakazi*, No. 1:20-CV-01603, 2022 WL 16855565, at *8 (M.D. Pa. Nov. 10, 2022). We may not "evaluate the ALJ's administrative decision on any grounds other than those the ALJ actually relied upon in making his decision." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL

---

[10] *See e.g., doc. 14* at 8 (citing *Admin. Tr.* 748 for the proposition that after Muhammad started medication, she could perform serial 7s); *id.* (citing *Admin. Tr.* 669–70 for the proposition that "NP Animashann found [Muhammad] had intact concentration and good memory, insight, and judgment"); *id.* at 9 (citing *Admin. Tr.* 426 for the proposition that Dr. Deneen found that Muhammad had intact memory); *id.* (citing *Admin. Tr.* 433, 437, 446, 450, 454, 470 for the proposition that "[e]ven when [Muhammad] was not taking any medication, Ms. Stevenson repeatedly found she exhibited sustained attention and intact recall); *id.* (citing *Admin. Tr.* 643, 647, 650, 653 for the proposition that Muhammad "also consistently showed sustained attention and intact recall at Healthy Moms visits"); *id.* (citing *Admin. Tr.* 670 for the proposition that when Muhammad "first saw Dr. Gordin, he found that she had intact concentration and good memory, insight, and judgment); *id.* (citing *Admin. Tr.* 747 for the proposition that after Muhammad "started taking medication, she reported it was effective and she claimed to have adequate focus and concentration"); *id.* at 10 (citing *Admin. Tr.* 748 for the proposition that "NP Animashann observed no symptoms that might impact cognitive decision making, interfere with daily activities, or executive function").

1028439, at \*6 n.13 (M.D. Pa. Mar. 14, 2014).  Thus, the Commissioner in his

brief "cannot do what the ALJ should have done," and the Commissioner's "*post*

*hoc* rationalization cannot provide substantial evidence for [the] determination[.]"

*Fox v. Kijakazi*, No. 3:18-CV-1486, 2021 WL 5441509, at \*4 (M.D. Pa. Nov. 19,

2021).  Also, "the court should not 'supply a reasoned basis for the agency's action

that the agency itself has not given.'" *Id.* (footnote omitted) (quoting *Gross v.*

*Comm'r of Soc. Sec.*, 653 F. App'x 116, at \*4 (3d Cir. 2016)).[11]

In this case, the ALJ did not discuss or even mention much of the evidence

the Commissioner uses in his brief to purportedly show that that ALJ's rationale is

traceable.  Thus, we reject the Commissioner's argument in this regard.

The Commissioner asserts more generally that the ALJ discussed

Muhammad's "subjective allegations, treatment, mental status findings, Plaintiff's

independent exam, Dr. Deneen's opinion, and the state agency psychologists'

findings." *Doc. 14* at 11.  And, according to the Commissioner, that ALJ "provided

a discussion of the evidence and an explanation for his conclusions that are

sufficient to enable meaningful judicial review." *Id.*  We disagree.

---

[11] "This principle does not undermine the reviewing court's 'responsibility
to uphold a decision of less than ideal clarity if the agency's path may be
reasonably discerned.'" *Fox*, 2021 WL 5441509, at \*4 n.4 (quoting *Christ the King*
*Manor, Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 730 F.3d 291, 305 (3d
Cir. 2013) (internal quotation omitted)).

Although the ALJ summarized Muhammad's assertions and testimony and he summarized some of the medical records, he did not discuss these things or explain how they supported his RFC determination. The ALJ also summarized the opinions of the state agency psychologists, and briefly explained that he found those opinions persuasive to the extent they were consistent with the limitations he set forth in the RFC. But his reasoning in that regard is circular. Similarly, the ALJ found Dr. Deneen's opinion persuasive to the extent it was consistent with the limitations he set forth in the RFC. And, more specifically, after noting that Dr. Deneen opined that Muhammad had, among other limitations, "a moderate limitation with sustaining concentration and performing a task at a consistent pace," the ALJ determined that Dr. Deneen's "opinion is persuasive to the extent that it is consistent with the claimant requiring simple instructions; simple and routine tasks; and with the other established limitations factored into the above residual functional capacity based on the combination of the claimant's mental impairments." *Admin. Tr.* at 35. The ALJ also noted Dr. Deneen's findings "are supported by his one-time mental status examination" and are "also generally consistent with the overall record evidence in its entirety including the claimant's treatment notes and the claimant's testimony elicited at the hearing." *Id*. But here again, the ALJ reasoning is largely circular and conclusory.

21

In the RFC, the ALJ did limit Muhammad to simple tasks.[12]  He concluded that Muhammad "can understand, remember and carry out simple instructions; she can perform simple, routine tasks; she can make simple work-related decisions; she can sustain attention and concentration over an 8 hour workday, with customary breaks, on performing such tasks; she can use judgment in making work-related decisions commensurate with this same type of work; [and she] can adapt to changes in routine work settings." *Admin. Tr.* at 30.  But the ALJ failed to provide an explanation for how this simple-tasks limitation accounts for Muhammad's moderate limitation regarding concentrating, persisting, or maintaining pace.

ALJ's are not forbidden from using a simple-tasks limitation to account for a claimant's moderate difficulties in concentration, persistence, or pace, but the ALJ must explain why the claimant can perform such tasks. *Hess*, 931 F.3d at 211. "[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Id.*  But without such an explanation, a simple-tasks limitation "does not warrant a conclusion about whether a claimant's difficulties in 'concentration, persistence, or pace' are so serious that [s]he cannot

---

[12] "A limitation to 'simple tasks' is fundamentally the same as one 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'"*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210 (3d Cir. 2019) (citations omitted).

satisfy the functional requirements of 'simple tasks'" because the limitation alone
"does not account for the *extent* of a claimant's difficulties." *Id.* at 213 (emphasis
in original).  A valid explanation is necessary because of the close relationship
between a simple-tasks limitation and concentration, persistence, or pace:

> [S]uch limitations directly encompass and anticipate a minimal
> level of ability in that functional area.  Under the Social
> Security Administration's Program Operations Manual System
> ("POMS"),"[u]nderstanding, carrying out, and remembering
> simple instructions" includes "[t]he ability to maintain
> concentration and attention for extended periods (the
> approximately 2-hour segments between arrival and first break,
> lunch, second break, and departure)[;] [t]he ability to perform
> activities within a schedule … [;] [t]he ability to sustain an
> ordinary routine without special supervision[;] . . .[and] [t]he
> ability to complete a normal workday and workweek without
> interruptions from psychologically based symptoms and to
> perform at a consistent pace and without an unreasonable
> number and length of rest periods."  In short, "concentration,
> persistence, or pace" is tightly linked to the capacity to
> complete "simple tasks."

*Id.* at 212–13 (citations and footnote omitted) (alterations in original).  Thus,
although the ALJ need not use particular language, "it is essential to assess
whether a valid explanation has been given for an ALJ's statement of a claimant's
limitation to 'simple tasks.'" *Id.* at 213.

The ALJ in *Hess* "highlighted, among other things, the following: mental
status examinations and reports that revealed that Hess could function effectively;
opinion evidence showing that Hess could do simple work; and Hess's activities of
daily living, which demonstrated that he is capable of engaging in a diverse array

of 'simple tasks.'" *Id.* at 214.  And the court in *Hess* concluded that the ALJ

offered a "valid explanation for her 'simple tasks' limitation":

> [T]he ALJ explained at length and with sound reasoning why
> Hess's "moderate" difficulties in "concentration, persistence, or
> pace" were not so significant that Hess was incapable of
> performing "simple tasks."  For example, coupled with her
> finding that Hess had "moderate difficulties" in "concentration,
> persistence or pace," the ALJ explained that Hess's "self-
> reported activities of daily living, such as doing laundry, taking
> care of his personal needs, shopping, working, and paying bill
> (when he has money), . . . are consistent with an individual who
> is able to perform simple, routine tasks."  In the same
> discussion, the ALJ also observed that "progress notes from
> treating and examining sources generally indicate no serious
> problems in this area of functioning, reporting that [Hess] could
> perform simple calculations, was fully oriented, and has intact
> remote/recent memory."

*Id.* at 213-14 (citations omitted).

Here, on the other hand, the ALJ did not provide a valid explanation for why

Muhammad could perform simple tasks even though she had a moderate limitation

in concentrating, persisting, or maintaining pace.  Unlike the ALJ's decision at

issue in *Hess*, the ALJ's decision here lacks examples of evidence that Muhammad

can perform simple tasks.  The ALJ does not link Muhammad's daily activities to

her ability to perform simple tasks.  Nor does he make a connection between

Muhammad's mental examinations or treatment records and her capability to

engage in simple tasks.  And although, as discussed above, ALJ determined that

Dr. Deneen's "opinion is persuasive to the extent that it is consistent with the

claimant requiring simple instructions; simple and routine tasks; and with the other established limitations factored into the above residual functional capacity based on the combination of the claimant's mental impairments," *Admin. Tr.* at 35, he does not explain why that is so.  Without an explanation for why the ALJ included the limitations that he did in the RFC despite finding that Muhammad had a moderate limitation regarding concentrating, persisting, or maintaining pace, we cannot say that the ALJ's decision in this regard is supported by substantial evidence.  Thus, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings.

### B.  Other Claims.

Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's failure to sufficiently articulate his reasoning regarding Muhammad's limitation on concentrating, persisting, or maintaining pace, we will not address Muhammad's remaining claims of error. "Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), *report and recommendation adopted*, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020).  "A remand may produce different results on these claims, making discussion of them moot." *Id.*

**C.  Remand is the appropriate remedy.**

Because the ALJ's decision is not support by substantial evidence, the question then is whether the court should remand the case to the Commissioner for further proceedings or award benefits to Muhammad benefits.  We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same).  But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22.  Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019).  "Thus, in practice any

26

decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, there has not been excessive delay in the litigation of Muhammad's claims, and we cannot say that substantial evidence on the record as a whole shows that Muhammad is disabled and entitled to benefits.  Thus, we will remand the case to the Commissioner for further proceedings.

## VI.  Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge